[No. F003567. Fifth Dist. Apr. 15, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE MODESTO CORTEZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts IV through V.

**COUNSEL**

Eric L. Henrikson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eddie T. Keller and Jane N. Kirkland, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN (G. A.), P. J.**—Appellant, Jose Modesto Cortez, appeals from a judgment entered upon a jury verdict finding him guilty of possession of heroin (Health & Saf. Code,[1] § 11350), transportation of heroin (§ 11352), and being under the influence of heroin, a misdemeanor (§ 11550). He was sentenced to the four-year midterm on the transportation count, and imposition of sentence on the possession count was stayed pursuant to Penal Code section 654. A one-year concurrent term in the county jail was imposed for being under the influence of heroin.

Appellant's complaints deal with the transportation count.

### FACTS

On October 7, 1983, Merced Police Officer Richard Rentfrow heard the sound of an automobile accident. Officer Rentfrow quickly responded to the scene of the accident, about one block away, and shortly thereafter was joined by Officer Ray Zarate.

Upon arrival, Rentfrow observed that the driver of one vehicle, a blue Plymouth, had already left the scene of the accident on foot. The passenger in the right front seat of the Plymouth (appellant) was just emerging from the car when Rentfrow arrived. Appellant began to walk away from the car, and Rentfrow called for him to stop. Appellant turned and faced Officer Rentfrow and then took four or five steps to the side while maintaining eye contact with Rentfrow. Appellant then stopped by some shrubbery, put his right hand inside the waistband of his pants, pulled out an object, and threw it into the bushes. Rentfrow retrieved a metal vial from the bushes, and later it was found to contain 1.05 grams of heroin. Appellant appeared to be under the influence of heroin. Later tests confirmed this observation.

### DISCUSSION

### PART I

Appellant argues that section 11352 (transportation of heroin) should not prohibit the transportation of small amounts of heroin for personal use. As appellant acknowledges, our Supreme Court in *People* v. *Rogers* (1971) 5 Cal.3d 129 [95 Cal.Rptr. 601, 486 P.2d 129] has spoken to this issue and held contrary to appellant's contention. The court in *Rogers* stated:

---

[1]Statutory references are to the Health and Safety Code unless otherwise indicated.

"Nor can we agree with defendant's further contention that the offense of illegal transportation requires a specific intent to transport contraband for the purpose of sale or distribution, rather than personal use. Neither the word 'transport,' the defining terms 'carry,' 'convey,' or 'conceal,' nor section 11531 read in its entirety, suggests that the offense is limited to a particular purpose or purposes.

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

". . . [I]n the absence of any legislative intent to the contrary, we conclude that section 11531 requires only a knowing transportation of marijuana, whether for personal use, sale, distribution or otherwise." (*Id.,* at pp. 134, 137.)

We are bound by that decision. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].) Any change must be made by the Supreme Court.

PART II

Next appellant urges that the court had a *sua sponte* duty to instruct the jury on the meaning of "transports" as used in section 11352. We disagree.

Although the trial court has a duty to instruct *sua sponte* as to those principles of law openly and closely associated with the case, it has no duty, absent a request, to define words and phrases when the terms used in the instruction given do not have a technical meaning peculiar to the law but are commonly understood by those familiar with the English language. (*People* v. *Kimbrel* (1981) 120 Cal.App.3d 869, 872 [174 Cal.Rptr. 816].) In *Kimbrel,* the court held "great bodily injury" did not require definition. Similarly, in *People* v. *Anderson* (1966) 64 Cal.2d 633, 639-640 [51 Cal.Rptr. 238, 414 P.2d 366], it was held that "force" and "fear" as used in the definition of the offense of robbery do not have technical meanings. (See Witkin, Cal. Criminal Procedure (1963) § 481, p. 487.) Likewise, in *People* v. *Bill* (1934) 140 Cal.App. 389, 397 [35 P.2d 645], the court held that "possession" did not have to be defined because it was "well understood by all persons of average intelligence."

In *People* v. *Kilborn* (1970) 7 Cal.App.3d 998 [87 Cal.Rptr. 189], a case involving a conviction for violation of section 11912 (transportation of a restricted dangerous drug), the court stated, "[t]o transport means to carry or convey from one place to another" (*id.,* at p. 1002), and "[t]he crux of the crime of transporting is movement of the contraband from one

place to another." (*Id.*, at p. 1003; see also, *People* v. *One 1941 Cadillac Club Coupe* (1944) 63 Cal.App.2d 418, 421 [147 P.2d 49].) An identical definition is found in Black's Law Dictionary (4th ed. 1968) at page 1670. Similarly, the American Heritage Dictionary (1969 ed.) at page 1365, defines the word "transport" simply as "to convey from one place to another; convey." As so defined, it is manifest that the word "transport" has no technical meaning but is used in the sense as it is commonly understood.

We conclude that the term "transports" is a term commonly understood by jurors and that the word has not acquired a technical legal definition which would require the trial court to instruct the jury *sua sponte* as to its meaning.

## PART III

██ The third argument appellant makes is that "it constitutes a violation of equal protection to punish him (and countless others) by four years in State Prison for possession of heroin for personal use, simply because his possession was not 'stationary,' while punishing others who possess heroin for personal use by, at most, three year sentences."[2] Specifically, appellant argues that because one who possesses heroin for personal use, but is not in motion when arrested, may only be sent to prison for sixteen months, two years or three years (§ 11350; Pen. Code, § 18), while one who transports heroin, even a small amount intended for personal use, can receive a punishment of three, four or five years, the statutory scheme represents a discriminatory classification against similarly situated individuals and should be struck down as violating his equal protection rights. Appellant also points to the disparity between the punishment for possession for sale (two, three or four years) and the punishment for transporting heroin, even for personal use (three, four or five years), as evidence of the discriminatory classification.

The contention of denial of equal protection must fail at the threshold. ██ " 'The basic rule of equal protection is that those persons similarly situated with respect to the legitimate purpose of the law must receive like treatment.' [Citation.] . . . 'The Constitution does not require things which

---

[2]The relevant parts of the pertinent statutes are: "[E]very person who possesses [heroin unlawfully] shall be punished by imprisonment in the state prison." (§ 11350.) "The punishment range is sixteen months or two or three years." (Pen. Code, § 18.)

"[E]very person who possesses for sale [heroin] shall be punished by imprisonment in the state prison for two, three, or four years." (§ 11351.)

"[E]very person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport [heroin unlawfully] shall be punished by imprisonment in the state prison for three, four, or five years." (§ 11352.)

are different in fact or opinion to be treated in law as though they were the same.' [Citations.] ■■ [¶] . . . Persons convicted of *different* crimes are not similarly situated for equal protection purposes. [Citations.]" *(People* v. *Macias* (1982) 137 Cal.App.3d 465, 472-473 [187 Cal.Rptr. 100].)

When presented with the issue, the California courts have uniformly held that persons convicted of different crimes are not similarly situated for equal protection purposes. *(People* v. *Macias, supra,* 137 Cal.App.3d 465, 472-473; *People* v. *Gayther* (1980) 110 Cal.App.3d 79, 91 [167 Cal.Rptr. 700]; *Smith* v. *Municipal Court* (1978) 78 Cal.App.3d 592, 601-602 [144 Cal.Rptr. 504].)

Appellant argues that persons who commit different crimes can be similarly situated, citing *Skinner* v. *Oklahoma* (1942) 316 U.S. 535 [86 L.Ed. 1655, 62 S.Ct. 1110]; *People* v. *Terflinger* (1978) 77 Cal.App.3d 302 [143 Cal.Rptr. 501].

However, even assuming arguendo that persons convicted of different crimes under some circumstances can be similarly situated for equal protection purposes, we are of the opinion persons convicted of possessing heroin for personal use and persons convicted of transporting heroin are not similarly situated. " 'The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated *with respect to the legitimate purpose of the law* receive like treatment.' [Citations.]" *(In re Gary W.* (1971) 5 Cal.3d 296, 303 [96 Cal.Rptr. 1, 486 P.2d 1201], quoting *Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194]; italics added.) Thus, the requirement that persons be "similarly situated" is in reference to the purpose of the law under scrutiny.

■■ Here, although both statutes share the general purpose of deterring the presence of heroin in our society, the specific purpose of section 11350 appears to be directed at deterring the individual who personally possesses and uses heroin. The pertinent part of section 11352, on the other hand, appears to be directed at attempting to prevent or deter the movement of drugs from one location to another, thereby inhibiting trafficking in narcotics and their proliferation in our society. *(People* v. *Holquin* (1964) 229 Cal.App.2d 398, 402 [40 Cal.Rptr. 364].) Anything that is related to trafficking is more serious than possessing. *(People* v. *Cina* (1974) 41 Cal.App.3d 136, 140 [115 Cal.Rptr. 758].)

In *People* v. *Rogers, supra,* 5 Cal.3d 129, the Supreme Court emphasized the purpose of the transportation prohibition and the greater seriousness of that offense.

"Defendant asserts that 'the most compelling explanation for the vast disparity between punishments of . . . section 11530 and 11531 is that section 11531 applies to those who by their transportation of marijuana have increased the risk of harm to others in the society,' suggesting that a person who transports marijuana or other drugs for his own use has not increased that risk. However, the Legislature was entitled to assume that the potential for harm to others is generally greater when narcotics are being transported from place to place, rather than merely held at one location. The Legislature may have concluded that the potential for increased traffic in narcotics justified more severe penalties for transportation than for mere possession or possession for sale, without regard to the particular purpose for which the transportation was provided, a matter often difficult or impossible to prove.[7] Moreover, a more severe penalty for those who transport drugs may have been deemed appropriate to inhibit the frequency of their own personal use and to restrict their access to sources of supply, or to deter the use of drugs in vehicles in order to reduce traffic hazards and accidents, as well as to deter occurrences of sales or distributions to others. The relative privacy and increased mobility afforded by the automobile offers expanded opportunities for the personal use and acquisition of drugs; greater penalties may legitimately be imposed to curtail those opportunities." (*Id.,* at pp. 136-137; fns. 5 and 6 omitted.)

Footnote 7 of the quoted passage provides: "With respect to heroin it has been stated, 'Because of the hazards of the business, a narcotics peddler will not usually carry a large amount of heroin on his person or in his car. When a customer is found, the peddler will go to the place where he has hidden his supply of narcotics and return with the amount of heroin requested.' (See Interim Reports of Special Study Commission on Narcotics (1961), Appendix to Journal of the Senate, vol. 2, p. 34.) If en route the police lawfully stop him in connection with a different offense and legally find the heroin, it could well be impossible to prove the peddler's purpose in transporting the heroin."

It follows that section 11350 and section 11352 are aimed at distinct and separate aspects of the "war on drugs." (See *People* v. *Blake* (1960) 179 Cal.App.2d 246, 251 [3 Cal.Rptr. 749].) Because the statutes serve different purposes, persons convicted under their provisions should not be considered to be similarly situated for equal protection purposes.

Accordingly, we conclude that there was no violation of the equal protection clause.

## Part IV*

. . . . . . . . . . . . . . . . . . . . . . . . .

The judgment of conviction of possession of heroin is reversed; in all other respects the judgment is affirmed. The trial court is directed to prepare a new abstract of judgment reflecting the change so directed and to furnish a copy thereof promptly to the Director of Corrections, and the Director of Corrections is directed to make the change upon appellant's record.

Martin, J., and Vander Wall, J.,† concurred.

Appellant's petition for review by the Supreme Court was denied August 1, 1985. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.

---

*See footnote, *ante,* page 994.
†Assigned by the Chairperson of the Judicial Council.