Filed 6/12/13  P. v. Laverty CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> SEAN LAVERTY, <br><br>     Defendant and Appellant. | B239965 <br><br> (Los Angeles County <br> Super. Ct. No. NA089959) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Arthur Jean, Judge.  Modified and, as modified, affirmed with directions.

Jin H. Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Kimberley J. Baker-Guillemet, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Sean Laverty appeals from the judgment entered following his convictions by jury on count 3 – possession of heroin for sale (Health & Saf. Code, § 11351), count 4 – transportation of heroin (Health & Saf. Code, § 11352, subd. (a)), count 5 – possession of hydrocone for sale (Health & Saf. Code, § 11351), count 6 – possession of oxycodone for sale (Health & Saf. Code, § 11351), and count 7 – possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), with court findings that he had suffered prior felony narcotics convictions (Health & Saf. Code, § 11370.2, subd. (a)) and prior prison terms (Pen. Code, § 667.5, subd. (b)).  The court sentenced appellant to prison for 10 years.  We modify the judgment and, as modified, affirm it with directions.

### FACTUAL SUMMARY

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established that about 9:40 a.m. on September 1, 2011, Long Beach Police Officer Eric Barich was dispatched to a Walgreens store in Long Beach to investigate a report that someone was intoxicated.[1]  Upon arrival, Barich saw appellant asleep and sitting in the driver's seat of a Ford SUV parked in front of the store.  Appellant was the sole occupant of the SUV.  The key was in the ignition in the accessory position, the radio was on, but the motor was not running.  The SUV belonged to Danielle Jewett, appellant's codefendant.[2]  The store was open.

Police found two Ziploc baggies in appellant's right lower rear pants pocket.  One baggy contained 8.42 grams of heroin and the other contained .451 grams of methamphetamine.  Two metal spoons and a cotton swab were in the SUV's center console.  The spoons contained brown residue and the bottom of each spoon was charred.  The glove box contained two unused hypodermic needles, three cellphones, and a

---

[1]     Barich testified during cross-examination that the original call he had received related to a female acting strangely.  The female was ultimately discovered farther down the street.

[2]     Jewett is not a party to this appeal.

charger. There were items in the backseat, including pill bottles containing prescription medication (i.e., hydrocodone, oxycodone, alprazolam, and amitriptyline), "several unused handwritten prescription [notepads] or – the paperwork for prescriptions," unused hypodermic needles, and a small digital scale. The above mentioned notepads were also on the floorboard. The scale was within arm's reach of appellant.

At the scene, appellant told Barich the heroin belonged to appellant but everything else Barich found in the SUV belonged to Jewett. Appellant said concerning the prescriptions or paperwork in the SUV that Jewett's friend worked at a medical group and wrote prescriptions. Appellant said Jewett "goes and turns a prescription in and sells them," i.e., "[Jewett] gets the prescription filled and she sells the prescriptions."

During the police investigation, Jewett walked towards Barich, saw police, then quickly walked away. While Barich was transporting appellant to jail, Barich saw Jewett about 20 blocks from the Walgreens store. Police arrested Jewett some distance from the store.

A criminalist testified concerning the previously mentioned bottles as follows. The bottles contained, inter alia, 150 hydrocodone bitartrate/acetaminophen pills, and 95 oxycodone pills. Two bottles were for Jewett. One bottle was for appellant. Other bottles were for other persons.

Long Beach Police Detective Luis Rodriguez, assigned to the drug investigation and major narcotics section, testified as follows. Heroin in the amount of 8.42 grams net weight had a street value of about $680, was a significant amount of heroin for a person to carry, and would supply a heroin user for 42 days. Hydrocodone and oxycodone were opiates similar to heroin. Sometime before noon on September 1, 2011, Rodriguez saw appellant in the booking area of the police station. Appellant appeared to be under the influence of a controlled substance and his behavior was consistent with heroin use.

Rodriguez testified that on September 5, 2011, appellant told Rodriguez the following. Appellant was a routine heroin user and sometimes smoked methamphetamine. Appellant sold some of the heroin and prescription medication to support his heroin habit. The heroin and methamphetamine that police found on

3

appellant's person, the scale that was near him in the SUV, and two of the three recovered cell phones, belonged to appellant. Appellant was unaware of the lawful medical purpose of the prescription medication and he had no medical problems. The spoons, two of the pill bottles, and some of the syringes belonged to Jewett.

Appellant told Rodriguez that appellant lived in Laguna Niguel. The following occurred during the prosecutor's direct examination of Rodriguez: "Q Did [appellant] tell you why he actually was in Long Beach? [¶] A Yes. [¶] Q What did he tell you? [¶] A [Appellant] stated that he came to Long Beach because pharmacies in Orange County do not sell syringes. They are more readily available in L.A. County, in this case Long Beach. So he came across from Seal Beach to Long Beach to buy the syringes at Walgreens in Long Beach." Rodriguez testified appellant told Rodriguez "that a friend obtained the prescriptions, gives them to [appellant] and [appellant] fills them out. . . . [Appellant] then . . . has friends go inside the pharmacy and receive the medication for him."

Rodriguez examined appellant's phones and saw messages in the inbox of one of the phones. Rodriguez did not remember the exact number of subjects asking for prescribed narcotics. Rodriguez, an expert in possession of drugs for sale, opined at trial that appellant possessed for sale the heroin, oxycodone, and hydrocodone. The basis for Rodriguez's opinion included the following facts. Appellant had multiple prescriptions filled out under various names and for the same medication. Rodriguez then testified, "The medication that was recovered, you go to Walgreens. You get your medicine." All of the medications were obtained from the pharmacy between "August 27 and September 1."

Moreover, appellant had two cellphones, and only one had messages in its inbox. Drug dealers used two phones, one for drug dealing and the other for personal use. Drug users knew how much they were going to use, and Rodriguez had never come across a situation "where users [were] walking around with [8.42 grams of] . . . heroin and a scale so he could weigh out his product." However, Rodriguez "always [came] across that when it is a drug dealer."

4

The prosecutor asked Rodriguez for other bases for his opinion, and Rodriguez later testified, ". . . I am basing – my opinion is he is coming from Laguna Niguel. The syringes are not readily available in Orange County. So he is coming down here." Appellant admitted to Rodriguez that appellant was selling some of the heroin and selling the prescription medications. During cross-examination, appellant asked Rodriguez if Jewett had been seen inside Walgreens. Rodriguez replied, "I believe the call was negated because a female, Miss Jewett, was coming in and out. And it appeared she was intoxicated on drugs." (*Sic*.) Appellant presented no defense evidence.

### ISSUES

Appellant claims (1) there is insufficient evidence of transportation of heroin, (2) Penal Code section 654 barred multiple punishment on his convictions for possession of heroin for sale (count 3) and transportation of heroin (count 4), and (3) and this court should review the sealed transcript of the in camera proceedings pertaining to appellant's *Pitchess*[3] motion.

### DISCUSSION

1. *Sufficient Evidence Supported Appellant's Conviction for Transporting Heroin (Count 4).*

Appellant claims there is insufficient evidence supporting his conviction for transporting heroin in violation of Health and Safety Code section 11352, subdivision (a)[4] (count 4). We reject his claim. That subdivision provides, in relevant part, that "every person who transports" heroin commits a felony. Appellant concedes he possessed the heroin police found on his person on September 1, 2011, and disputes only the sufficiency of the evidence that he "transport[ed]" that heroin.

---

[3] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

[4] Health and Safety Code section 11352, subdivision (a), provides, inter alia, that "every person who transports . . . (1) any controlled substance specified in subdivision . . . (c) . . . of Section 11054" commits a felony. Heroin is a controlled substance specified in Health and Safety Code section 11054, subdivision (c)(11).

A person "transports" a controlled substance within the meaning of Health and Safety Code section 11352, subdivision (a) when a person moves the substance from one place to another. (*People v. Arndt* (1999) 76 Cal.App.4th 387, 398; *People v. Cortez* (1985) 166 Cal.App.3d 994, 998-999.) The transportation element does not quantify the distance that must be traversed and does not require more than minimal movement. (Cf. *People v. Emmal* (1998) 68 Cal.App.4th 1313, 1315-1316 [interpreting the substantially similar Health & Saf. Code, § 11379, subd. (a)].) Where the movement occurs in a vehicle the "evidence need only show that the vehicle was moved while under the defendant's control." (*Id.* at p. 1318.) The offense can be established by circumstantial evidence and any reasonable inferences drawn from that evidence. (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1746.)

In the present case, on September 1, 2011, Barich found appellant, the sole occupant of the SUV, asleep and sitting in its driver's seat with the key in the ignition in the accessory position and the radio operating. The SUV was parked in front of the Walgreens store. The jury reasonably could have concluded someone drove the SUV there. We note Barich did not testify that he saw (1) someone other than appellant drive or park the SUV or (2) appellant enter the SUV only after it was parked. Whether or not appellant was in possession of the SUV, Barich did not testify he saw someone other than appellant in possession of it. Barich did not testify that, before police found the heroin in appellant's rear pants pocket, Barich saw someone put the heroin there.

On September 5, 2011, appellant told Rodriguez that appellant lived in Laguna Niguel. Appellant also told Rodriguez why appellant "actually was in Long Beach." Although Rodriguez did not explicitly testify appellant told him why appellant actually was in Long Beach "on September 1, 2011," there is no evidence appellant "actually was in Long Beach" on any day other than September 1, 2011, i.e., the day appellant possessed the heroin. Police arrested appellant for his narcotics possession on September 1, 2011, in Long Beach. Appellant's statements to Rodriguez reflect that when appellant referred to the fact that appellant "actually was in Long Beach," appellant was referring

6

to the fact that he was there on September 1, 2011, when Barich saw him. Appellant's statements betray no confusion on this issue.

Accordingly, appellant told Rodriguez that appellant "came across from Seal Beach to Long Beach to buy the syringes at Walgreens in Long Beach." On September 1, 2011, the SUV was parked in front of Walgreens in Long Beach. Appellant told Rodriguez that appellant filled out prescriptions and had friends enter the pharmacy and receive the medication for him. Rodriguez testified to the effect Jewett (to whom the SUV belonged) was coming in and out of Walgreens on September 1, 2011.

In Rodriguez's expert opinion, appellant possessed for sale heroin and other drugs, and part of the basis for Rodriguez's opinion was, "The medication that was recovered, *you go to Walgreens*. You get your medicine." (Italics added.) Rodriguez's testimony provided evidence appellant was a drug dealer, and Rodriguez testified to the effect Rodriguez always had come across situations in which a drug dealer was "*walking around* with [8.42 grams of] . . . heroin." (Italics added.)

The prosecutor asked Rodriguez for other bases for his opinion, and Rodriguez later testified, ". . . I am basing – my opinion is *he is coming from Laguna Niguel*. The syringes are not readily available in Orange County. So *he is coming down here*." (Italics added.) The evidence suggested that on September 1, 2011, appellant and Jewett travelled together in the SUV to Walgreens to implement an illegal scheme to obtain drugs from Walgreens, i.e., the Walgreens in front of which the SUV was parked with appellant in its driver's seat.

In light of the previous discussed authorities and evidence, there was sufficient evidence to convince a rational trier of fact, beyond a reasonable doubt, that appellant transported heroin for purposes of Health and Safety Code section 11352, subdivision (a), including sufficient evidence appellant moved the heroin from one place to another, with the result appellant "transport[ed]" the heroin with the meaning of that subdivision.[5]

---

[5]     *People v. Kilborn* (1970) 7 Cal.App.3d 998, cited by appellant, does not compel a contrary conclusion. That case held that the defendant's mere possession of LSD in a closed box inside his suitcase in his motel room did not constitute transportation of that

7

2. *Penal Code Section 654 Barred Multiple Punishment on Counts 3 and 4.*

Appellant's prison sentence of 10 years included a five-year upper term for transportation of heroin (count 4) with a concurrent four-year upper term for possession of heroin for sale (count 3). Appellant claims Penal Code section 654 barred multiple punishment on counts 3 and 4. Respondent concedes the issue.

In light of part 1 of our Discussion, there was substantial evidence appellant simultaneously possessed for sale, and transported, the heroin by driving the SUV to Walgreens while possessing the heroin in his pocket. However, once appellant parked outside Walgreens the transportation ceased and only the possession for sale continued.

Nonetheless, even if the possession for sale, and transportation, of the heroin were multiple acts, it appears appellant had the same criminal objective when committing them – to sell the heroin. (See *People v. Bradley* (2003) 111 Cal.App.4th 765, 769.) Moreover, for all the record reflects, appellant was asleep (although apparently under the influence of heroin) after the transportation of heroin ceased and during the subsequent period within which he possessed the heroin for sale. That is, during that subsequent period he was not selling drugs. The purpose of Penal Code section 654 is to insure that a defendant's punishment is commensurate with culpability. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211.) We accept respondent's concession. (Cf. *People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583.)

---

LSD. (*Id*. at pp. 1002-1003.) In *Kilborn*, police accompanied the defendant into his motel room, searched his suitcase, and found inside a closed box containing the LSD. The defendant in *Kilborn* denied knowledge of the box and the LSD. (*Id*. at p. 1001.) Appellant's argument that "[b]oth a motel room and an SUV are used in connection with travel" (Rep/7) misses the mark because a motel room, unlike an SUV, is not capable of movement. Moreover, appellant was already seated in the driver's seat of the SUV when Barich first saw him, appellant admitted the heroin belonged to appellant, and the present case contains other evidence that was not present in *Kilborn* (e.g., appellant's statements to Rodriguez, and Rodriguez's expert testimony, providing evidence appellant travelled to the Walgreens in Long Beach).

3. *The Trial Court Fulfilled Its Responsibilities Under Pitchess.*

The nonconfidential record reflects as follows. On November 28, 2011, appellant filed a *Pitchess* motion, seeking various information in the personnel files of Barich and Rodriguez. On December 23, 2011, the parties stipulated that the motion be granted in part, i.e., "for false police reports" as to Rodriguez and "for false testimony" as to Barich. The court granted the motion to that extent only.

On December 27, 2011, the court conducted an in camera *Pitchess* hearing and ordered sealed the transcript of the hearing. Following that hearing, the court, in open court, indicated there was one discoverable item as to Rodriguez. The trial court did not indicate there was any other discoverable information.

Appellant claims this court should review the record pertaining to the *Pitchess* motion to determine whether the trial court erred by ruling there was only one discoverable item. Trial courts are granted wide discretion when ruling on motions to discover police officer personnel records. (*People v. Samayoa* (1997) 15 Cal.4th 795, 827; *People v. Memro* (1995) 11 Cal.4th 786, 832.) We have reviewed the contents of the sealed transcript of the December 27, 2011 in camera *Pitchess* hearing. The transcript constitutes an adequate record of the trial court's review of any document(s) provided to the trial court during the in camera hearing, and said transcript fails to demonstrate that the trial court abused its discretion by failing to disclose any additional information. (Cf. *Samayoa*, at p. 827; see *People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1230, 1232.) The trial court fulfilled its responsibilities under *Pitchess*.

## *DISPOSITION*

The judgment is modified by staying execution of sentence on appellant's conviction for possession of heroin for sale in violation of Health and Safety Code section 11351 (count 3) pending completion of his sentence on his conviction for transporting heroin in violation of Health and Safety Code section 11352, subdivision (a) (count 4), such stay then to become permanent, and, as modified, the judgment is affirmed. The trial court is directed to forward to the Department of Corrections an amended abstract of judgment reflecting the above modification.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.

10