[No. F001903. Fifth Dist., June 28, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
BENNY NAVAREZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and IV.

938

COUNSEL

William C. Spater, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, J. Robert Jilson, Edmund D. McMurray and Nancy Sweet, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MARTIN, J.—Defendant Benny Navarez was convicted after trial by jury of possession of heroin for sale (Health & Saf. Code, § 11351), driving under the influence (Veh. Code, § 23152, subd. (a)), and driving a motor vehicle without a license (Veh. Code, § 12500, subd. (a)). Defendant admitted a prior prison term. The trial court denied probation and sentenced defendant to state prison for the upper term of four years on count I. The court also sentenced defendant to the Kern County jail for concurrent terms of six months each on counts II and III. The probation report and sentencing transcript are devoid of any mention of the admitted prior felony conviction for which defendant's sentence should have been enhanced for one additional year. (Pen. Code, § 667.5, subd. (b).)

Defendant filed a timely notice of appeal.

FACTS

On July 18, 1982, at approximately 2:30 a.m. defendant was arrested by a City of Delano police officer, Officer Harold White, for driving under the influence of alcohol.

Officer White transported defendant to the Delano jail where Diana Boyd was the custodial officer on duty. Ms. Boyd booked defendant at 2:42 a.m. She removed the property from his pockets and placed it on the counter.

The property included a belt, matches, comb, papers, $22 in currency, and $2.05 in change. Ms. Boyd then searched defendant. The search included defendant's hair and body, but excluded the buttocks and crotch area.

Defendant was then seated in a chair and asked for factual information for booking purposes.[1] While defendant was seated in the chair, he placed his hands behind his back for about five minutes. He was not wearing handcuffs at the time. While defendant was seated, Ms. Boyd "heard like something of paper being crumpled or crunched up." After the booking paper work was completed, Officer White advised defendant of his *Miranda*[2] rights and defendant declined to give any statement.

Defendant was then taken to be fingerprinted. When Ms. Boyd asked him to return to the booking area, he resisted. Ms. Boyd brought defendant back forcibly and seated him in the same chair. He was later taken to a detoxification cell. After placing defendant in the cell, Ms. Boyd returned to the booking area to complete her work. She took defendant's chair to rest her leg while finishing his paper work. As she picked up the chair, she saw a tinfoil package on the floor. She opened the package and found several smaller packets inside. One of the packets contained a brownish powder. The tinfoil package was found approximately two inches from the back leg of the chair and three to four inches from a nearby wall.

Delano Police Detective Larry C. Jones contacted defendant on July 19 about 1:30 p.m. Another officer had advised Jones the tinfoil package contained heroin and Jones wanted to question defendant about it. Jones advised defendant of his rights and he agreed to waive them. Jones asked defendant about the suspected heroin found in the booking room. He initially denied all knowledge of the heroin and accused the officers of attempting to frame him or set him up. Upon further questioning, defendant admitted the heroin was his and that he had obtained it from a friend in Delano.

When first taken to the jail, defendant consented to a blood sample. After the tinfoil package was discovered, Officer White examined defendant's arms. White saw no injection/pin hole marks on defendant's arms except for the needle mark caused by the drawing of the blood sample. The Kern

---

[1] The booking area was furnished with one chair, a refrigerator, typewriter, and a counter for paper work. Ms. Boyd had mopped the floor of the booking area one hour before defendant's arrival. She had been in the room for the entire hour and no one else had been present.

[2] *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

County Sheriff's crime laboratory determined the blood sample contained a 0.29 percent blood alcohol level.

Dan E. DeFraga, a criminalist with the Kern County Sheriff's crime lab, analyzed the brown powder found in the tinfoil package. He concluded the substance was heroin. DeFraga indicated the large tinfoil package contained four smaller foil bindles with a light brown substance containing heroin, two smaller bindles with a darker brown substance containing heroin, and one empty bindle. The total amount of powder in the bindles was 933 milligrams, which DeFraga considered "a usable amount."

Bakersfield Police Officer Al Matthews testified he had served six years in the vice narcotics section of the Bakersfield Police Department and had extensive experience in street contact with heroin. In response to a hypothetical question, Officer Matthews concluded a person possessed heroin for sale where he was arrested with seven small tinfoil bindles containing a total of 933 milligrams of heroin, the suspect had no track marks, and he did not appear to be under the influence of heroin. Matthews believed the empty bindle was for a "burn," i.e., going to be sold for heroin although actually empty.

## Defense

Defendant did not testify on his own behalf to avoid impeachment with his prior conviction. However, defendant's counsel made an offer of proof as to his proposed testimony. Counsel indicated defendant would deny any confession or admission to police and would deny possession of any narcotic.

Evaristo Pesina testified he was the custodial officer whose shift followed Diana Boyd's. He did not recall removing defendant from his cell for an interview with any Delano Police Department officers.

## DISCUSSION

### I. DID THE TRIAL COURT PROPERLY DENY APPELLANT'S MOTION TO DISMISS FOR LACK OF SPEEDY TRIAL?*

. . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 936.

## II. Did the Trial Court Properly Rule Defendant's Confession Was Admissible?

Defendant contends his confession to Detective Jones should have been suppressed. He argues that once he invoked his privilege against self-incrimination, the police could not lawfully subject him to a new round of interrogation after repeating warnings of his constitutional rights.

On the first day of trial, defendant moved to suppress his confession to Detective Jones. Arresting Officer Harold White and Jones testified about the circumstances preceding the confession. White arrested defendant on July 18 for driving under the influence of alcohol. He transported defendant to the Delano jail and read defendant his *Miranda* rights at about 3:06 a.m. Defendant did not waive his rights and did not talk to White. White did not question defendant any further. Between July 18 and July 20, White did not talk to Jones about defendant. Jones contacted defendant at about 1:30 p.m. on July 19. He read defendant his *Miranda* rights and defendant waived his rights and agreed to talk. Jones questioned defendant only about the suspected heroin found in the booking area. Jones did not ask any questions about the driving under the influence charges or defendant's whereabouts on July 18. Jones was unaware White previously read *Miranda* rights to defendant nor did Jones talk to White before interviewing defendant. Defendant initially denied any knowledge of the heroin. Upon further questioning, defendant admitted possession of the heroin and said he obtained it from a friend in Delano. Defendant would not disclose the friend's name and declined to talk further. Jones terminated the questioning. Both counsel argued the motion and the court held the confession admissible, relying upon *People v. Lopez* (1979) 90 Cal.App.3d 711, 719-720 [153 Cal.Rptr. 541].[4]

Defendant argues the court's ruling was erroneous under *People v. Fioritto* (1968) 68 Cal.2d 714 [68 Cal.Rptr. 817, 441 P.2d 625] and *People v. Pettingill* (1978) 21 Cal.3d 231 [145 Cal.Rptr. 861, 578 P.2d 108]. In *Fioritto*, defendant and two companions were arrested for burglary and taken to a police station. Police gave defendant *Miranda* warnings and he refused their request for a written waiver of his rights. Later, the police confronted him with his two accomplices who had previously confessed and implicated him. The police again gave defendant the *Miranda* warnings and renewed their request for a signed waiver. This time defendant complied and confessed to the burglary. The Supreme Court reversed his conviction for second degree burglary, stating:

---

[4]The Supreme Court disapproved *People v. Lopez* in *People v. Smith* (1983) 34 Cal.3d 251, 267-269 [193 Cal.Rptr. 692, 667 P.2d 149].

"By his refusal to waive his constitutional rights initially, defendant indicated that he intended to assert his rights—the privilege had been *once invoked*—and all further attempts at police interrogation should have ceased. Although the confrontation of defendant with his two juvenile accomplices who had confessed injected a new factor into the questioning, the didactic language of the United States Supreme Court shows no disposition to permit subsequent interrogation in the absence of counsel even if authorities believe there has been a change of circumstances. Thus we have no alternative but to hold that the confession thereafter secured constituted inadmissible evidence at trial." (*People* v. *Fioritto, supra,* 68 Cal.2d 714, 719.)

In *Pettingill,* defendant and three companions were arrested for burglary. The arresting officer read defendant his constitutional rights at the scene, defendant declined to talk, and the officer terminated questioning. Two hours later at the police station, the arresting officer again advised defendant of his constitutional rights and asked if he wished to talk about the charge. Defendant again declined and the officer terminated questioning. Two days later defendant's companions confessed to several unrelated burglaries to a detective from another county. The following day that detective confronted defendant with the confessions and read him his constitutional rights. Defendant then agreed to talk and confessed to the burglaries. The Supreme Court reversed defendant's conviction, holding his confession inadmissible under the state privilege against self-incrimination. (Cal. Const., art. I, § 15.) The court construed that provision of the California Constitution to furnish greater protection than the parallel provision of the United States Constitution. The court cited the *Fioritto* rule as the rule of decision in California. (See also *People* v. *Mattson* (1984) 37 Cal.3d 85, 90-92 [207 Cal.Rptr. 278, 688 P.2d 887].)

In the instant case, defendant was charged with committing crimes on July 18, 1982, subsequent to the adoption of Proposition 8, an initiative measure, at the June 8, 1982, primary election. The measure took effect on June 9, 1982 (Cal. Const., arts. II, §§ 8, 10, subd. (a) and XVIII, § 4), and applies to prosecutions for crimes committed on or after its effective date. (*People* v. *Smith, supra,* 34 Cal.3d 251, 262.)

Defendant contends the express language of article I, section 28, subdivision (d), commonly referred to as the "Truth-in-Evidence" provision,[5]

---

[5]Article I, section 28, subdivision (d), of the California Constitution provides: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press."

excepts Evidence Code sections 940 and 1204[6] from application of the other provisions of Proposition 8, and thus allows for continued application of the *Fioritto* rule under article I, section 15, of the California Constitution.

On the other hand, the People contend that while section 28, subdivision (d) does not abrogate the Fifth Amendment's protection against self-incrimination, Proposition 8 mandates interpretation of the Fifth Amendment's protection under applicable United States Supreme Court decisions rather than California decisions when the latter decisions are more restrictive, as in the instant case.[7] In other words, the People argue that Proposition 8 mandates a rejection of "independent state grounds" in Fifth Amendment "self-incrimination" situations. Our California Supreme Court recently held in *In re Lance W.* (1985) 37 Cal.3d 873, 890 [210 Cal.Rptr. 631, 694 P.2d 744], that section 28, subdivision (d) abrogated both the "vicarious exclusionary rule" under which a defendant had standing to object to the introduction of evidence seized in violation of the rights of a third person, and

---

[6]Evidence Code section 940 provides: "To the extent that such privilege exists under the Constitution of the United States or the State of California, a person has a privilege to refuse to disclose any matter that may tend to incriminate him."

Evidence Code section 1204 provides: "A statement that is otherwise admissible as hearsay evidence is inadmissible against the defendant in a criminal action if the statement was made, either by the defendant or by another, under such circumstances that it is inadmissible against the defendant under the Constitution of the United States or the State of California."

[7]The United States Supreme Court decision applicable to the instant case is *Michigan v. Mosley* (1975) 423 U.S. 96 [46 L.Ed.2d 313, 96 S.Ct. 321]. There, a police detective arrested the defendant in connection with certain robberies and gave him *Miranda* warnings. Defendant declined to discuss the robberies and the detective ceased interrogation. More than two hours later, another detective gave defendant *Miranda* warnings and questioned him about an unrelated murder. Defendant made an incriminating statement which was later used in his trial for murder. The Michigan Court of Appeal reversed his conviction for murder on the ground *Miranda* mandated a cessation of all interrogation after defendant had declined to answer the first detective's questions. The Supreme Court concluded admission of defendant's incriminating statement did not violate *Miranda*, stating: ". . . Through the exercise of his option to terminate questioning he can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" (*Michigan v. Mosley, supra,* 423 U.S. 96, 103-104 [46 L.Ed.2d 313, 321], fn. omitted.)

The court held defendant's "right to cut off questioning" was fully respected. He was given full and complete *Miranda* warnings at the outset of the second interrogation and voluntarily waived his rights. (*Id.,* at pp. 104-105 [46 L.Ed.2d at pp. 321-322].) The Supreme Court noted: "This is not a case, therefore, where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind. In contrast to such practices, the police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation." (*Id.,* at pp. 105-106 [46 L.Ed.2d at p. 322].)

a defendant's right to object to and suppress evidence seized in violation of the California, but not the federal, Constitution. Thus, the issue is clearly framed. If the federal rule controls, under *Mosley,* the second, independent interrogation of defendant on a different subject matter, and after full re-advice of *Miranda* warnings, is facially admissible. However, if the California rule enunciated in *Fioritto* still controls, defendant's confession must be suppressed.

In *People* v. *Jacobs* (1984) 158 Cal.App.3d 740, 750-751 [204 Cal.Rptr. 849], hearing denied October 25, 1984, the Second District Court of Appeal held Evidence Code section 940 is an existing "statutory rule of evidence relating to privilege" within the meaning of California Constitution, article I, section 28, subdivision (d). The People nevertheless conclude Evidence Code section 940 was not intended to incorporate *Miranda* and its California progeny and *Miranda* decisions are not "existing statutory rule[s] of evidence relating to privilege." (Cal. Const., art. I, § 28, subd. (d).)

Defendant argues the privilege against self-incrimination exists outside the courtroom setting. The United States Supreme Court has held: "Today, then, there can be no doubt that the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves. We have concluded that without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely. In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." (*Miranda* v. *Arizona, supra,* 384 U.S. 436, 467 [16 L.Ed.2d 694].) Similarly, California courts have recognized the privilege against self-incrimination goes to and is with the citizen in the police station. (See *People* v. *Clemmons* (1957) 153 Cal.App.2d 64, 76 [314 P.2d 142] and cases cited therein.)

In *Ramona R.* v. *Superior Court* (1985) 37 Cal.3d 802 [210 Cal.Rptr. 204, 693 P.2d 789], a 17-year-old was prosecuted for murder. The trial court refused to grant the minor immunity from use at trial of any statements she made (1) in the hearing to determine her fitness to be tried in juvenile court or (2) to her probation officer. She declined to testify at the fitness hearing or make any statement to her probation officer. The Supreme Court ordered issuance of a writ of mandate directing the trial court to vacate its

finding of unfitness and to conduct a new fitness hearing. Prior to Proposition 8, statements made by a minor to a probation officer and to a court in a fitness hearing could not be introduced as substantive evidence against the minor at trial. (*Bryan* v. *Superior Court* (1972) 7 Cal.3d 575, 587 [102 Cal.Rptr. 831, 498 P.2d 1079].) The *Ramona R.* court held the Truth-in-Evidence provision of Proposition 8 did not nullify the law providing for such use immunities, stating: "It is true that [Evidence Code] section 940 does not on its face refer to use immunities. However, the language of that provision is purposefully broad, and is meant to include within its reach judicial decisions relating to the privilege against self-incrimination." (*Ramona R.* v. *Superior Court, supra,* 37 Cal.3d at p. 808.)

In view of the holding in *Jacobs* and our Supreme Court's subsequent ruling in *Ramona R.,* we must here conclude section 28, subdivision (d) excepts Evidence Code sections 940 and 1204 from application of the other provisions of Proposition 8 and allows for continued application of "independent state grounds" in California Constitution, article I, section 15 "self-incrimination" factual situations.

In determining the weight to be given to *Mosley* in this state, the Supreme Court in *People* v. *Pettingill, supra,* 21 Cal.3d 231, 248, invoked the settled doctrine that "decisions of the United States Supreme Court defining fundamental civil rights are persuasive authority to be afforded respectful consideration, but are to be followed by California courts only when they provide no less individual protection than is guaranteed by California law." (*People* v. *Longwill* (1975) 14 Cal.3d 943, 951, fn. 4 [123 Cal.Rptr. 297, 538 P.2d 753], disapproved on another point in *People* v. *Laiwa* (1983) 34 Cal.3d 711, 727-728 [195 Cal.Rptr. 503, 669 P.2d 1278].) The court concluded the *Mosley* test provided less protection than California law. The court then stated "the *Fioritto* rule, rather than the *Mosley* test, will remain the rule of decision in all state prosecutions in California." (*Id.,* 21 Cal.3d at p. 251.) (See *People* v. *Smith, supra,* 34 Cal.3d 251, 265.) Under *Fioritto,* once the privilege against self-incrimination is invoked, all further attempts at police interrogation must cease. Where this rule is violated, ". . . we have no alternative but to hold that the confession thereafter secured constituted inadmissible evidence at trial." (*People* v. *Fioritto, supra,* 68 Cal.2d 714, 719.) In the instant case, defendant invoked his privilege against self-incrimination and the subsequent interrogation, even though on a totally different subject matter, was improper.

Thus, the trial court erroneously declined to suppress defendant's confession to Detective Jones.[8]

---

[8]In view of this conclusion, we need not address defendant's contention concerning the voluntariness of his confession and the appropriate standard of proof.

## III. Did the Trial Court Erroneously Admit Defendant's Prior Conviction for Impeachment Purposes?

Defendant next contends the trial court erroneously denied his motion to suppress use of a prior conviction for impeachment purposes.

In connection with count I of the information, possession of heroin for sale, it was alleged defendant had served a prior prison term (Pen. Code, § 667.5, subd. (b)) after a conviction for transportation or sale of controlled substances. (Health & Saf. Code, § 11352.) Defendant admitted the prior felony conviction before trial. At the close of the People's case-in-chief, defense counsel moved to suppress use of the prior conviction to impeach defendant. The trial court denied the motion, holding:

"THE COURT: As I read Section 3 of Proposition 8, Subdivision (f), which reads as follows: 'Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement [of sentence] in any criminal proceeding.' I believe that that is a very specific statute and I believe the reason that it was put in there was to overrule the Supreme Court's ruling in People vs. Beagle. I believe that Section 28, Subsection (d), which is the so-called truth in evidence statute, when viewed in connection with the statute that I just previously read, was a general statute and, therefore, I'm going to allow the prosecution to impeach your client with the prior conviction should he take the stand."

Defense counsel then made the following offer of proof: "In essence, his testimony could be characterized as a complete denial of the charge and all the elements thereof as well as the confession, and in view of the fact that the court has overruled my motion to suppress as impeachment the prior conviction, it is defense counsel's decision and Mr. Navarez' decision at this time that he will not take the stand, and that I further understand that the court's ruling on this matter is based upon the Proposition 8 law as embodied in the California Constitution at this time.

"THE COURT: That is correct."

In *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], the Supreme Court addressed the impact of Proposition 8 on impeachment with felony priors. The court stated: "We shall hold that—always subject to the trial court's discretion under section 352—subdivision (f) authorizes the use of any felony conviction which necessarily involves moral turpitude, even if the immoral trait is one other than dishonesty. On the other hand, subdivision (d), as well as due process, forbids the use of con-

victions of felonies which do not necessarily involve moral turpitude." (*Id.,* at p. 306.) Applying these rules, the court found the trial court erroneously permitted defendant, charged with receiving stolen property, to be impeached with a prior for simple heroin possession. The court held the latter offense does not necessarily involve moral turpitude. Further, the Supreme Court held the trial court erroneously permitted defendant to be impeached with a prior for heroin possession for sale. While this offense necessarily involves moral turpitude, i.e., not dishonesty but the intent to corrupt others, the trial court erroneously concluded it had no discretion as to either prior. Finally, the court held under California Constitution, article VI, section 13 and *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], the errors were nonprejudicial. The court reasoned the prosecution case was strong, the defendant testified, and the jury knew defendant had a criminal past from defense witnesses who testified before defendant was impeached. Although the court held the trial court retained Evidence Code section 352 discretion, it did not discuss how the trial court might have exercised it with regard to the possession for sale prior.

In the instant case, the trial court implicitly held it had no discretion with respect to defendant's prior conviction for transportation/sale of heroin. The Supreme Court concluded the error in *Castro* was not prejudicial because the People's case was strong, defense witnesses provided exculpatory testimony, defendant herself volunteered she had been incarcerated at CRC and a women's prison before any attempt was made to impeach her with the priors, and the court instructed the jury to consider the priors only to determine the credibility of the witness. Upon a review of the entire record, the Supreme Court held it not reasonably probable a result more favorable to the defendant would have occurred absent the error.

Unlike Castro, the defendant in the instant case declined to testify at trial for fear of impeachment. Defense counsel presented only one defense witness, the custodial officer whose shift followed Diana Boyd's. He did not recall removing defendant from his cell for an interview with any Delano Police Department officers. The court did instruct the jury: "In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove beyond a reasonable doubt every essential element of the charge against him . . . ."

Evidence Code section 788 provides in relevant part that ". . . [f]or the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony . . . ." This authorization of judicial discretion is tempered by Evidence Code section 352 which permits the trial judge to exclude otherwise admissible evidence "if its probative value is substan-

tially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice . . . ." (*People* v. *Barrick* (1982) 33 Cal.3d 115, 122 [187 Cal.Rptr. 716, 654 P.2d 1243].)

*Castro* requires the trial court first determine whether the prior felony conviction meets the threshold test of relevancy, i.e., a felony conviction which necessarily involves moral turpitude, even if the immoral trait is one other than dishonesty. Otherwise, the prior may not, under any circumstances, be admitted solely for impeachment purposes. However, even though the moral turpitude test is satisfied, the trial court must still engage in the balancing process prescribed in Evidence Code section 352.

The law is now clear a trial court vested with section 352 discretion must determine probative value, appraise prejudicial effect, and weigh one against the other. The record must affirmatively show the trial judge did in fact weigh prejudice against the probative value. (*People* v. *Green* (1980) 27 Cal.3d 1, 25-26 [164 Cal.Rptr. 1, 609 P.2d 468].) Further, in permitting impeachment, the trial court must explicitly determine the risk of undue prejudice did not substantially outweigh the probative value. Where a trial court fails to exercise section 352 discretion in the manner required by *Green,* error occurs.

In the instant case, the trial court did not address the relevancy question and, further, failed to engage in the weighing process required under section 352. Defense counsel specifically stated on the record his client would not testify in view of the trial court's ruling it would allow impeachment by defendant's prior felony conviction in the event defendant testified on his own behalf. Further, defendant made an offer of proof as to what his testimony would otherwise be, a complete denial of the charge as well as the confession.

In *People* v. *Barrick, supra,* 33 Cal.3d 115, 130, the court stated: ". . . This court has no way of knowing what defendant's testimony would have been, thus, we have no basis for concluding that such testimony would not have affected the result. '"[E]rrors at a trial that deprive a litigant of the opportunity to present his version of the case . . . are . . . ordinarily reversible, since there is no way of evaluating whether or not they affected the judgment." (Traynor, [The Riddle of Harmless Error (1970)] at p. 68.) A conviction under such circumstances is a "miscarriage of justice" within the meaning of article VI, section 13 of the California Constitution. (See *People* v. *Watson* [(1956)] 46 Cal.2d [818, 836,] 837 . . .; *People* v. *Gainer* (1977) 19 Cal.3d 835, 855 . . .; *People* v. *Fries, supra,* 24 Cal.3d at pp. 233-234.)' (*People* v. *Spearman, supra,* 25 Cal.3d at p. 119.)"

The instant case goes further. Defendant made his offer of proof on the record, denial of possession and denial of alleged incriminating statements. We cannot assume on the record before us the trier of fact below would have summarily rejected defendant's explanation of the facts and circumstances surrounding the finding of the packet containing heroin and his subsequent interrogation.

Thus, the judgment of conviction must be reversed. Upon retrial, the lower court must ascertain (1) whether defendant's prior conviction involves moral turpitude and (2) whether the probative value of defendant's prior conviction on his credibility outweighs the risk of undue prejudice if allowed into evidence. We briefly address these requirements to assist the lower court in its determination.

The threshold question is whether a prior conviction for transportation/sale of heroin (Health & Saf. Code, § 11352) does or does not involve moral turpitude. In Justice Kaus' words, "If it does not, that is the end of it." (*People* v. *Castro, supra,* 38 Cal.3d 301, 316.) *Castro* further holds that while simple possession of heroin does not necessarily involve moral turpitude, possession for sale does pass the test. The trait involved is not dishonesty but rather the intent to corrupt others. (*Id.,* at p. 317.) The record here does not indicate the precise act for which defendant was convicted. However, the *Castro* court equates "moral turpitude" with a "readiness to do evil." (*Id.,* at pp. 313-314.) The pertinent part of section 11352 is directed at trafficking in narcotics and their proliferation in our society. (*People* v. *Holquin* (1964) 229 Cal.App.2d 398, 402 [40 Cal.Rptr. 364], disapproved on another point in *People* v. *Daniels* (1975) 14 Cal.3d 857, 861-862 [122 Cal.Rptr. 872, 537 P.2d 1232].) Anything that is related to trafficking is more serious than possessing. (*People* v. *Cina* (1974) 41 Cal.App.3d 136, 140 [115 Cal.Rptr. 758]; *People* v. *Cortez* (1985) 166 Cal.App.3d 994, 1000 [212 Cal.Rptr. 692].) We are mindful of the fact that "transportation" of a controlled substance is susceptible to as many variations as there are possible factual situations. *Castro* states: ". . . [A] witness' prior conviction should only be admissible for impeachment if the least adjudicated elements of the conviction necessarily involve moral turpitude." (*People* v. *Castro, supra,* 38 Cal.3d 301, 317.) ■ However, on the basis of *Holquin* and *Cina,* we conclude a conviction under section 11352 does satisfy the threshold test of *Castro,* "a readiness to do evil," and thus entails moral turpitude.

There remains, of course, the determination by the trial court whether the risk of undue prejudice substantially outweighs probative value. (Evid. Code, § 352.)

From *Castro* it is clear in every case in which the trial court concludes the prior felony satisfies the "moral turpitude" test, the court must then determine the probative value, appraise prejudicial effect, and weigh the factors against each other. ■ As a precondition to admissibility, the trial court must explicitly determine the risk of undue prejudice does not substantially outweigh probative value. And the record *must affirmatively show* the trial court did the requisite weighing. (*People* v. *Green, supra,* 27 Cal.3d 1, 25-26.)

*Castro* states: "The intention of the drafters of the initiative [Prop. 8] was to restore trial court discretion as visualized by the Evidence Code and to reject the rigid, black letter rules of exclusion which we had grafted onto the code by the *Antick* [*People* v. *Antick* (1975) 15 Cal.3d 79 (123 Cal.Rptr. 475, 539 P.2d 43)] line of decisions." (*Id.,* at p. 312.) Thus, it would seem the factors discussed in *Beagle* and its progeny survive not as rigid black letter law but as guidelines to the trial judge. For example, *Castro* supports the view the admission of an identical or similar prior is not, per se, an abuse of discretion.

In the instant case, defendant's prior felony conviction is similar although not identical to the current charge. At retrial, if the trial court concludes on the then record before it that defendant's prior felony conviction satisfies the threshold test of "moral turpitude," although not dishonesty, then the court must further engage on the record in the balancing test prescribed in Evidence Code section 352. If the trial court encounters any difficulty in this process, then it need merely look to *Castro* for guidance and direction.

## IV. THE ENHANCEMENT*

. . . . . . . . . . . . . . . . . . . . . . . .

The judgment is reversed and remanded for new trial.

Brown (G. A.), P. J., and Woolpert, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 17, 1985. Grodin, J., and Lucas, J., were of the opinion that the petition should be granted.

*See footnote, *ante,* page 936.