Filed 12/30/13  P. v. Fletcher CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SHAWN DEPREE FLETCHER,<br><br>    Defendant and Appellant. | B242669<br><br>(Los Angeles County<br>Super. Ct. No. BA387336) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gail Ruderman Feuer, Judge.  Affirmed.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Eric E. Reynolds, Lauren E. Dana and Stephanie Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Shawn Depree Fletcher appeals from the judgment entered following a jury trial that resulted in his conviction for sale of a controlled substance, cocaine base. The trial court sentenced Fletcher to a term of nine years in prison. Fletcher contends the trial court prejudicially erred by admitting evidence of his prior drug sale convictions. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

a. *People's evidence.*

(i) *The August 2011 drug sale.*

On August 2, 2011, at approximately 4:30 p.m., Los Angeles Police Department (L.A.P.D.) officers were conducting an undercover narcotics buy operation in the area of 7th Street and Ceres Avenue in Los Angeles. Fletcher was sitting on the curb between two parked cars on Ceres Avenue, next to an unidentified woman. Plainclothes officers, including Jose Calderon and Mike Pedroza, were in the area, and uniformed "chase" officers were waiting nearby. Officer Jackeline Orellana, attired in old, baggy clothing, approached Fletcher and asked if he was "working," street lingo for " 'are you selling narcotics.' " Fletcher said yes and asked Orellana what she wanted. Orellana said she needed "a 20." Fletcher opened his hand, palm up, and displayed two off-white rocks later determined to weigh .30 grams of a substance containing cocaine base, wrapped in clear plastic.[1] Orellana handed Fletcher $20 in prerecorded cash, which had been given to her earlier that day by Officer Calderon,[2] and took the cocaine. Orellana walked away and signaled that a drug buy had transpired, and Calderon radioed for uniformed "chase officers" to move in. Orellana observed uniformed Officers Cho and Patterson arrive and detain Fletcher less than a minute later. Fletcher had the prerecorded cash in his left hand when detained. He also had $140 in cash, a bindle that appeared to contain cocaine

---

[1] Officer Orellana testified that the cocaine was in a usable amount.

[2] Officer Calderon had photocopied the bills, signed and dated the photocopy, and given the bills to Orellana.

2

residue, and a pipe. Cho gave Pedroza the bills, and Pedroza verified that they had the same serial numbers as the prerecorded bills.

Officer Orellana believed she had never seen Fletcher prior to the sale, and the undercover team did not discuss him prior to leaving the station. Officer Calderon was informed that a buy team had arrested Fletcher in early 2000, but he had no independent recollection of Fletcher. Officers Orellana, Calderon, Pedroza, and Cho testified that they would not lie in order to make an arrest.

(ii) *Fletcher's prior drug sales.*

On February 27, 2003, L.A.P.D. Officer Michael Saragueta was working as part of an undercover narcotics buy team in the vicinity of 7th Street and Stanford Avenue in Los Angeles, an area near Ceres Avenue. Saragueta approached Fletcher and asked if he had a "dime," that is, $10 worth of rock cocaine. Fletcher broke off several pieces from a large off-white solid and gave them to Saragueta. Saragueta gave Fletcher a prerecorded $10 bill in return. Fletcher crossed the street and entered a liquor store, where uniformed officers arrested him. Police recovered the buy money from Fletcher's pocket.

On January 25, 2006, Officer Saragueta was again working undercover. He saw Fletcher with a woman in the area of 5th and Crocker Streets in downtown Los Angeles, near 7th Street and Ceres Avenue. The woman asked Saragueta "how much [he] was looking for." Fletcher also asked, " 'How much, how much?' " Saragueta gave Fletcher $20 in cash; in exchange, the woman gave Saragueta off-white solids resembling rock cocaine. It appeared to Saragueta that Fletcher and the woman were working together. Police subsequently recovered the buy money from the woman.

b. *Defense evidence.*

Fletcher represented himself at trial.

3

(i) *Testimony of Darwin Spears.*

Darwin Spears testified for the defense, as follows.[3]  On January 5, 2006, Officer Calderon, who was working undercover, approached Spears and asked if he could " 'do a nickel.' "  Spears replied he did not have anything.  Shortly thereafter, L.A.P.D. Officers Gonzalez and Gasca jumped from a police car, tackled him, and choked him, causing him to lose consciousness.  When he regained consciousness he was handcuffed.  He asked, " 'what the "f" is going on?' "  Officer Gasca replied, " 'Shut up, N-I-G-G-E-R' " and slammed Spears's head into the pavement with his boot and kicked him.  As a result, Spears sustained a concussion and a head injury that required three stitches.  Officers searched him repeatedly but did not find drugs or prerecorded money.  Eventually Saragueta searched him and claimed to find $5 of prerecorded buy money in his pocket.  Spears filed a complaint against Saragueta for allegedly planting the buy money on him.  At the time of trial Spears was incarcerated.  He admitted suffering convictions for selling cocaine in 2000 and 2007, and for possessing cocaine for sale in 2005.

(ii) *Fletcher's testimony.*

Fletcher testified in his own behalf, as follows.  He denied being approached by Officer Orellana, possessing or selling cocaine, or having the "buy money."  He had been sitting on the curb talking with a woman whom he had met a few days previously.  Two police cars pulled up.  Officers Cho and Patterson detained Fletcher and searched his pockets, and then his backpack.  They found neither buy money nor contraband.  Officer Patterson said, "If you're clean, you don't have [any] warrants, we're going to let you go."  The woman with whom Fletcher had been talking was searched by a female officer and allowed to leave.  Just before he was taken to the police station, Fletcher heard Officer Pedroza say, " 'Take him down.  He's had a sales before.  We're going to get him again.' "

---

[3]     Fletcher learned of Spears as a result of a defense *Pitchess* motion.  (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531.)

4

Fletcher also offered explanations for the prior incidents involving Officer Saragueta. In the February 2003 incident, he had been recently paroled and was in the area of 7th Street to avail himself of the services of the Los Angeles Mission. He was addicted to cocaine, and had suffered over 29 convictions for being under the influence. While Fletcher was purchasing food from a food truck, Saragueta approached and asked him for "a dime." Fletcher pushed Saragueta and told him to get away. Saragueta left, but returned a few minutes later with a Black man who asked why Fletcher had behaved aggressively towards Saragueta. Fletcher apologized. Saragueta kept asking about buying drugs, and Fletcher reiterated that he did not have any. Saragueta and the other man left. Fletcher went into a nearby store. Officers entered the store, apprehended Fletcher, and transported him to jail. He pleaded guilty on the advice of counsel, although he had not possessed cocaine, only mint candy.

In the January 2006 incident, Fletcher had been sitting with a woman who appeared to be both using and selling a small amount of cocaine. He and the woman were smoking marijuana when Saragueta approached. Fletcher told Saragueta he remembered him and knew he was "a cop." Fletcher walked away. Nonetheless, he was arrested and charged with and convicted of conspiracy to sell cocaine. He had a crack pipe and marijuana on his person, but not money or cocaine.

On cross-examination, the prosecutor elicited that Fletcher had been convicted of robbery in 1992; of driving a vehicle without the owner's consent in 1994; and for sales of cocaine in 2003 and 2006.

(iii) *Officer Calderon.*

Fletcher called Officer Calderon as a defense witness. Calderon testified that Spears had sold him rock cocaine in the January 5, 2006 incident. Calderon had been informed that Spears was injured, but not because of the arrest.

2. *Procedure.*

Trial was by jury. Fletcher was convicted of the sale of cocaine base (Health & Saf. Code, § 11352, subd. (a)). He admitted suffering one prior "strike" conviction for

5

robbery (Pen. Code, §§ 211, 667, subds. (b)-(i), 1170.12, subds. (a)-(d));[4] two prior convictions within the meaning of Health and Safety Code section 11370.2, subdivision (a); four prior convictions within the meaning of section 1203, subdivision (e)(4); and serving four prior prison terms within the meaning of section 667.5, subdivision (b). The trial court denied Fletcher's motion for a new trial and granted his *Romero*[5] motion to strike the prior "strike" conviction. It sentenced Fletcher to a term of nine years in prison and imposed a restitution fine, a suspended parole restitution fine, a laboratory analysis fee and related penalty assessment, a court operations assessment, and a criminal conviction assessment. Fletcher appeals.

## DISCUSSION

*The trial court did not prejudicially err by admitting evidence of Fletcher's prior drug sales.*

Fletcher contends admission of Officer Saragueta's testimony regarding his two prior narcotics sales was prejudicial error, requiring reversal of the judgment. He urges that the evidence lacked probative value and was highly prejudicial; "there was never a clear basis upon which the prosecutor sought to introduce" the evidence; and the trial court failed to weigh the probative value of the evidence against its prejudicial effect, adequately analyze its relevance, or state the basis for its admission prior to instructing the jury.

a. *Additional facts.*

Prior to the presentation of evidence, the trial court inquired whether the People would seek to admit Fletcher's prior drug sales pursuant to Evidence Code section 1101, subdivision (b). The prosecutor stated he had not yet decided. He explained, however, that the priors would be relevant to show Fletcher's "M.O.; he does almost the same thing in terms of the method in which he sells the narcotics." "He's a street-level narcotics seller. In all of the cases that I have been able to find, he's approached by an individual,"

---

[4] All further undesignated statutory references are to the Penal Code.

[5] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

6

similar to the facts in the instant case. The prosecutor averred the prior crimes evidence was therefore admissible to show intent, modus operandi and lack of mistake, as well as to "refute what [Fletcher] . . . has indicated that he's going to try to use as his defense," including that he had a substance abuse problem.

The court explained to Fletcher that evidence of his prior convictions would not be mentioned in the People's case-in-chief unless the prosecutor brought them in under Evidence Code section 1101, subdivision (b), or Fletcher testified and was impeached with them. The trial court inquired, "I assume, Mr. Fletcher, you would be seeking to bifurcate the priors?" Fletcher responded affirmatively and the court granted the motion.

After discussing other matters, the trial court returned to the issue of the prior drug sales. The prosecutor noted that Officer Saragueta had been inadvertently left off the People's witness list, and requested and was given permission to add him. Fletcher objected to Saragueta's addition to the list, because he believed complaints had been filed against Saragueta. Fletcher argued, "[i]t would be unconstitutional for me not to address to impeach [the officer] based on his record of misconduct." The court and parties then began jury selection. Fletcher did not object to admission of the evidence on any other ground.

During trial, the parties revisited the issue of the prior crimes evidence. The court inquired, "Mr. Fletcher, you indicated that you have an objection to Officer Saragueta testifying in this case. What is your objection based on?" Fletcher replied, "My objection is based on the fact that it would be against my constitutional rights to be able to not appropriately seek into impeachment purposes of the officer that will be testifying against me. [¶] He has numerous amounts of *Pitchess* hits and a lot of crimes of moral turpitude as far as an officer's misconduct."[6] The parties then discussed other matters related to the People's addition of Saragueta as a witness.

---

[6] The trial court clarified that Fletcher had not actually been provided with *Pitchess* discovery regarding Officer Saragueta, and Fletcher's statements were based on his own experiences.

7

Before Saragueta testified, the prosecutor asked to clarify the "rulings as far as 1101(b) goes, and the use of his testimony to prove the defendant's knowledge." The court explained: "I made a ruling yesterday that Officer Saragueta could testify regarding prior drug sales as to which he was a percipient witness. He can testify regarding that. He will, of course, be cross-examined by Mr. Fletcher. I am allowing him to be called for that purpose because I do find that it's relevant to the knowledge of . . . Mr. Fletcher in making the sales. [¶] I would note that with that testimony comes in as 1101(b), we should fashion an instruction for the jury, which is a limiting instruction because they can only use it certain ways." Fletcher did not object, nor did he seek clarification of the basis for the court's ruling.

Shortly after Saragueta began his testimony, the trial court gave a limiting instruction.[7] The court gave a similar limiting instruction when instructing the jury after the close of evidence.[8] During argument, the prosecutor echoed these instructions,

---

[7]     The trial court stated: "I understand you're going to hear about incidents that are not charged in this case. When I instruct you on the law, I will give you the entire instruction about how you may consider this evidence and for what purpose. I'm going to take a moment and read a portion of that instruction to you so that you understand how you may consider this evidence. [¶] That portion states that under certain circumstances, which we'll hear later, you may consider evidence of uncharged offenses for the limited purpose of deciding whether or not the defendant acted in this case with the intent to sell a controlled substance and whether the defendant knew of the presence of cocaine base and whether the defendant knew of the substance's nature or character of being a controlled substance. [¶] Do not consider this evidence for any other purpose. Do not conclude from the evidence that the defendant has a bad character or is disposed to commit the crime. [¶] If you conclude the defendant committed the herein uncharged offenses, that conclusion is only one factor to consider with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the crime of sale of a controlled substance. The People must still prove the charge beyond a reasonable doubt."

[8]     That instruction stated: "The People presented evidence that the defendant committed offenses of sale of a controlled substance that were not charged in this case. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude

8

explaining: "With respect to what happened back in 2003 and 2006, I need to be very careful in instructing you as to what you can use that evidence for. Just so it's out in the open, you cannot say the defendant did it in 2003; the defendant did it in 2006; so therefore he did it now. That is not the purpose of that evidence. [¶] What that evidence is provided to you for is to show that the defendant knew about the nature of the crack cocaine."

> b. *Applicable legal principles.*

Only relevant evidence is admissible. (Evid. Code, § 350.) Evidence is relevant if it has a tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action. (Evid. Code, § 210; *People v. Mills* (2010) 48 Cal.4th 158, 193; *People v. Lee* (2011) 51 Cal.4th 620, 642.) A trial court has broad discretion in determining whether evidence is relevant and whether Evidence Code section 352 precludes its admission, but lacks discretion to admit irrelevant evidence. (*People v. Cowan* (2010) 50 Cal.4th 401, 482; *Mills*, at p. 195; *People v. Williams* (2008) 43 Cal.4th 584, 634.)

Evidence that a defendant committed misconduct other than that currently charged is generally inadmissible to prove he or she had a propensity to commit the charged crime. (Evid. Code, § 1101, subd. (a); *People v. Kelly* (2007) 42 Cal.4th 763, 782; *People v. Rogers* (2009) 46 Cal.4th 1136, 1165.) However, such evidence is admissible

that it is more likely than not that the fact is true. [¶] If the People have not met this burden, you must disregard this evidence entirely. [¶] If you decide that the defendant committed the uncharged offenses, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not the defendant acted with the intent to sell a controlled substance as alleged, whether the defendant knew of the presence of cocaine base and whether the defendant knew of the substance's nature or character of a controlled substance. [¶] In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses and the charged offenses. [¶] Do not consider this evidence for any other purpose. [¶] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime. [¶] If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the crime of sale of a controlled substance. The People must still prove the charge beyond a reasonable doubt."

9

if it is relevant to prove, among other things, intent, knowledge, identity, or the existence of a common design or plan. (Evid. Code, § 1101, subd. (b);[9] *People v. Carter* (2005) 36 Cal.4th 1114, 1147; *People v. Ewoldt* (1994) 7 Cal.4th 380, 400; *People v. Spector* (2011) 194 Cal.App.4th 1335, 1374.) When reviewing the admission of evidence of other offenses, a court must consider: (1) the materiality of the fact to be proved or disproved, (2) the probative value of the other crimes evidence to prove or disprove the fact, and (3) the existence of any rule or policy requiring exclusion even if the evidence is relevant. (*People v. Fuiava* (2012) 53 Cal.4th 622, 667.)

Even if other crimes evidence is admissible under Evidence Code section 1101, subdivision (b), it should be excluded under Evidence Code section 352 if its probative value is substantially outweighed by undue prejudice. (*People v. Scott* (2011) 52 Cal.4th 452, 490-491; *People v. Thomas* (2011) 52 Cal.4th 336, 354.) Because evidence relating to uncharged misconduct may be highly prejudicial, its admission requires careful analysis. (*People v. Fuiava, supra,* 53 Cal.4th at p. 667; *People v. Ewoldt*, *supra*, 7 Cal.4th at p. 404.) " ' " 'Prejudice' as contemplated by [Evidence Code] section 352 is not so sweeping as to include any evidence the opponent finds inconvenient. Evidence is not prejudicial, as that term is used in a section 352 context, merely because it undermines the opponent's position or shores up that of the proponent.' " ' " (*Scott*, at p. 490.) Evidence is prejudicial under section 352 if it uniquely tends to evoke an emotional bias against the defendant and has little effect on the issues. (*Id*. at p. 491.)

---

[9]     Evidence Code section 1101 provides in pertinent part: "(a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.
    "(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

We review the trial court's rulings under Evidence Code sections 1101 and 352 for abuse of discretion. (*People v. Fuiava, supra,* 53 Cal.4th at pp. 667-668; *People v. Scott, supra,* 52 Cal.4th at p. 491; *People v. Thomas, supra,* 52 Cal.4th at pp. 354-355.)

    c. *Application here.*

    (i) *Forfeiture.*

Although the parties do not address the issue, we first turn to the question of forfeiture. Fletcher never objected below that the prior crimes evidence was either unduly prejudicial or improper character evidence. When the trial court expressly asked for the basis of his objection to the evidence, Fletcher's only complaint was that he had not had the opportunity to seek *Pitchess* discovery regarding Officer Saragueta. "Evidence Code section 353, subdivision (a) allows a judgment to be reversed because of erroneous admission of evidence only if an objection to the evidence or a motion to strike it was 'timely made and so stated as to make clear the specific ground of the objection.' " (*People v. Demetrulias* (2006) 39 Cal.4th 1, 20-21; *People v. Waidla* (2000) 22 Cal.4th 690, 717.) Courts have consistently held that a defendant's failure " ' " 'to make a timely and specific objection' on the ground asserted on appeal makes that ground not cognizable." ' [Citation.]" (*Demetrulias*, at p. 20; *People v. Thornton* (2007) 41 Cal.4th 391, 430, fn. 6 [failure to raise a section 1101 objection below forfeited the issue on appeal]; *People v. Medina* (1995) 11 Cal.4th 694, 729 [same]; *People v. Hinton* (2006) 37 Cal.4th 839, 893, fn. 19 [failure to object to evidence under Evidence Code section 352 forfeits claim on appeal]; *People v. Gurule* (2002) 28 Cal.4th 557, 626 [same].) Fletcher's objection that he had not obtained *Pitchess* discovery on Officer Saragueta did nothing to alert the trial court that he wished to exclude the evidence on the grounds now asserted.[10] By failing to raise Evidence Code section 352 or 1101 objections, Fletcher

---

[10] In fact, it is not clear that, as a tactical matter, Fletcher wished to exclude the prior crimes evidence. Fletcher explained to the trial court, during discussions on a different point: "This is my third time being paroled [to the area where the drug sale occurred]. This is my third time being arrested there by the same individual police officers that patrol that area. They are taking tag team turns of trying to prosecute me with the alle[gation] of crack cocaine sales. [¶] . . . [A]ll of these times I have never had any

11

deprived the trial court of the opportunity to make a fully informed and more explicit ruling on the issue.  (*People v. Lindberg* (2008) 45 Cal.4th 1, 48.)  Thus, Fletcher has forfeited his claims.  (*Demetrulias*, at pp. 21-22; *Lindberg*, at p. 48; *People v. Boyettte* (2002) 29 Cal.4th 381, 423.)

(ii) *Trial court's purported failure to balance probative value against prejudicial effect.*

Fletcher's arguments fail in any event.  Fletcher contends the trial court failed to conduct the requisite Evidence Code section 352 balancing of probative value against prejudicial effect.  Any deficiency in this regard was due to Fletcher's failure to interpose an Evidence Code section 352 objection.  Nonetheless, the record suggests the trial court did balance the probative value and prejudicial effect of the evidence.  "[A]lthough the record must affirmatively show that the trial court weighed prejudice against probative value in admitting evidence of prior bad acts [citations], the trial judge 'need not expressly weigh prejudice against probative value—or even expressly state that he has done so [citation].'  [Citations.]"  (*People v. Padilla* (1995) 11 Cal.4th 891, 924, disapproved on another point in *People v. Hill* (1998) 17 Cal.4th 800, 822-823, fn. 1; *People v. Hollie* (2010) 180 Cal.App.4th 1262, 1274-1275.)  The "necessary showing can be inferred from the record despite the absence of an express statement by the trial court." (*People v. Prince* (2007) 40 Cal.4th 1179, 1237; *People v. Nunez and Satele* (2013) 57 Cal.4th 1, 31; *People v. Harris* (2013) 57 Cal.4th 804, 845.)

---

drugs on my possession.  I never had any marked money on my possession."  During his closing argument, he urged that police officers were "rogue cops" who "set people up, planted dope on them."  He argued that Officer Saragueta "had it out" for him, and Officer Orellana's focus on him was suspect.  Thus, to some extent, the prior incidents played into Fletcher's defense.  Moreover, when discussing whether defense witness Spears could be impeached with his prior convictions, Fletcher *did* object that the priors were "more prejudicial than probative," suggesting he was aware of the applicable law.

Here, the court sua sponte suggested to Fletcher that he would probably wish to bifurcate trial of the prior conviction allegations, demonstrating that the court was aware of the potential for prejudice inherent in the evidence. The court considered the prosecutor's offer of proof on Officer Saragueta's testimony and found the evidence had probative value. Immediately thereafter, the court sua sponte stated that a limiting instruction would be necessary, demonstrating that "the court was concerned that the evidence be presented in a manner that offered probative value, as opposed to prejudicial effect." (*People v. Little* (2012) 206 Cal.App.4th 1364, 1378, 1379.) The record as a whole thus demonstrates that the court balanced the probative value and prejudicial effect of the evidence. (*Id.* at p. 1379.)

Fletcher faults the trial court for failing to fully analyze how the prior acts showed his intent and knowledge. The prosecutor explained his theory that the evidence was admissible under Evidence Code section 1101, subdivision (b) to show intent, knowledge, modus operandi, and lack of mistake. Fletcher did not object, argue that the prosecutor's theories were untenable, or request further explanation of the basis for the court's ruling. Therefore Fletcher cannot now complain that the court's analysis of the issue was too cursory. Fletcher's citation to *In re Cortez* (1971) 6 Cal.3d 78, is unavailing. In *Cortez*, the court construed its then-recent decision in *People v. Tenorio* (1970) 3 Cal.3d 89, which had held that a statute prohibiting a trial court from striking a prior conviction allegation without the prosecutor's agreement violated the separation of powers doctrine. (*In re Cortez*, at p. 82.) The *Cortez* petitioner filed a habeas petition asking that the trial court dismiss a prior conviction allegation in light of *Tenorio*'s retroactive holding. (*Id.* at p. 83.) The superior court denied the petition without granting a hearing or appointing counsel. *Cortez* held that a hearing was required, reasoning, inter alia, that in order to " 'exercise the power of judicial discretion all the material facts in evidence must be both known and considered, together also with the legal principles essential to an informed, intelligent and just decision.' " (*Id.* at pp. 85-86, 88.) *Cortez* does not assist Fletcher. The *Cortez* court's statements arose in an entirely different procedural context, and do not support a conclusion that admission of the

evidence here was erroneous. The record before us does not suggest that the trial judge here failed to consider the relevant facts and legal principles.

Fletcher also complains that the trial court failed to state the basis upon which the evidence would be admitted prior to instructing the jury. When ruling, the trial court expressly stated that the evidence would be admissible to prove Fletcher's knowledge. When instructing the jury, the court added another ground of admissibility, that is, that the evidence could also be used to prove intent. Fletcher did not object to either the instructions or the court's ruling, and cannot now be heard to complain that the trial court added "intent" when instructing the jury. Nor could Fletcher have been surprised: from the start, the prosecutor had averred the evidence was admissible to prove intent.

(iii) *Admissibility of the prior crimes evidence.*

We turn next to Fletcher's assertion that the evidence should have been excluded because it lacked probative value and was unduly prejudicial. To prove the charged crime of sale of a controlled substance, the People were required to prove Fletcher sold cocaine base in a usable amount, knew of its presence, and knew it was a controlled substance. (CALCRIM No. 2300.) Where a defendant's knowledge of the narcotic contents of the drug and his intent to sell are at issue, evidence of prior narcotics offenses is generally admissible to show his or her knowledge and intent. (*People v. Pijal* (1973) 33 Cal.App.3d 682, 691.)

However, we agree with Fletcher that on the facts of the instant case evidence of the prior drug sales did not have substantial probative value that outweighed its inherent prejudice if offered to prove intent or knowledge. (*People v. Carter, supra,* 36 Cal.4th at p. 1149 [the probative value of the uncharged offense evidence must be substantial].) As Fletcher points out, if the jury believed he engaged in the conduct alleged by the People––exchanging rocks of cocaine for cash—his intent in doing so was "self-evident" and could not reasonably be disputed. "Evidence of *intent* is admissible to prove that, if the defendant committed the act alleged, he or she did so with the intent that comprises an element of the charged offense. 'In proving intent, *the act is conceded or assumed; what is sought is the state of mind that accompanied it*.' [Citation.]" (*People v. Ewoldt, supra,*

14

7 Cal.4th at p. 394, fn. 2, second italics added.) Here, Fletcher did not concede he engaged in the cocaine transaction: his defense was that the drug sale never occurred and the officers had planted the buy money on him. Nor did he contend he lacked the requisite knowledge and sold the cocaine mistakenly believing it was an innocent substance.

Under these circumstances, the prior drug sales had minimal relevance on the issues of intent or knowledge. *People v. Lopez* (2011) 198 Cal.App.4th 698, is instructive. There, the defendant was charged with burglarizing a home, among other things, and the prosecution presented evidence of his prior thefts to prove intent. *Lopez* concluded evidence of the uncharged offenses lacked substantial probative value. (*Id.* at p. 715.) The court reasoned: "Evidence regarding the Mendicino burglary showed that someone entered the kitchen of the Mendicino residence and took two purses. Assuming appellant committed the alleged conduct, his intent in so doing could not reasonably be disputed—there could be no innocent explanation for that act. Thus, the prejudicial effect of admitting evidence of a prior car burglary and prior car theft outweighed the probative value of the evidence to prove intent as to the Mendicino burglary charge. [Citation.] [¶] . . . [E]vidence of uncharged acts cannot be used to prove something that other evidence showed was beyond dispute; the prejudicial effect of the evidence of the uncharged acts outweighs its probative value to prove intent as it is cumulative regarding that issue. [Citations.]" (*Ibid.*) Admission of other crimes evidence " 'cannot be justified merely by asserting an admissible purpose.' " (*Id.* at p. 716; see also *People v. King* (2010) 183 Cal.App.4th 1281, 1301; *Bowen v. Ryan* (2008) 163 Cal.App.4th 916, 926 [where defendant in civil case denied assaultive behavior, his intent was not at issue and evidence of uncharged acts could not be admitted to prove an irrelevant matter].) The same is true here.

The People urge that the prior drug sale evidence was properly admitted to show modus operandi or common design or plan. The evidence might well have been admissible for this purpose. Prior misconduct evidence is admissible to prove the defendant committed the charged offense pursuant to the same design or plan he or she

15

used to commit the uncharged misconduct. (*People v. Ewoldt, supra,* 7 Cal.4th at pp. 393, 394, fn. 2 [" 'The presence of a design or plan to do or not to do a given act has probative value to show that the act was in fact done or not done' "].) Assuming arguendo that the prior crimes were sufficiently similar to the charged crime,[11] evidence Fletcher engaged in the two prior drug transactions might have supported an inference he was engaged in a scheme to sell cocaine and committed the current offense as a part of that plan. However, the evidence was ultimately not admitted for this purpose. The jury was expressly instructed it could consider the evidence only to determine whether Fletcher acted with the requisite intent and knowledge. Therefore the question of whether the evidence was admissible to show common scheme or plan is irrelevant.

(iv) *Harmless error.*

In any event, any error in admission of the evidence was not prejudicial. "[T]he erroneous admission of other crimes evidence is harmless if it does not appear reasonably probable that without the error a result more favorable to the defendant would have been reached." (*People v. Lopez, supra,* 198 Cal.App.4th at p. 716; *People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Carter, supra,* 36 Cal.4th at p. 1152; *People v. Walker* (2006) 139 Cal.App.4th 782, 808.) Here, any prejudice that might have resulted from admission of the prior crimes evidence was neutralized by the limiting instruction, which we presume the jury followed. (*People v. Rogers* (2013) 57 Cal.4th 296, 332; *People v.*

---

[11] Fletcher contends the prior drug sales were too "generic" to have probative value. To establish the existence of a common scheme or plan, the prior and current crimes must be sufficiently similar, but they need not be distinctive or unusual. (*People v. Ewoldt, supra,* 7 Cal.4th at p. 403.) The evidence must demonstrate " ' "not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." ' [Citation.]" (*People v. Catlin* (2001) 26 Cal.4th 81, 111.) In the prior and current offenses, Fletcher was selling the same substance, cocaine base, in the same area of downtown Los Angeles. In each instance, he waited for a pedestrian to approach him. In the January 2006 offense, unlike the other two, Fletcher worked with a woman who participated in the drug sale. Whether the three incidents possessed the requisite similarity is a close question. Because we conclude Fletcher's claims are forfeited and admission of the evidence, even if error, was harmless, we need not decide whether the evidence was admissible on this basis.

*Lindberg, supra,* 45 Cal.4th at pp. 25-26; *People v. Hovarter* (2008) 44 Cal.4th 983, 1005.) The limiting instruction was echoed in, and reinforced by, the prosecutor's argument, which stressed that the jury could not consider the prior crimes evidence as propensity evidence. (See *Rogers*, at p. 332.)

Moreover, there is no likelihood Fletcher would have obtained a more favorable result had the prior crimes evidence been excluded from the People's case-in-chief. Fletcher, who testified in his own behalf, was properly impeached with his prior narcotics sales convictions. (See *People v. Navarez* (1985) 169 Cal.App.3d 936, 949 [sale of narcotics in violation of Health and Safety Code section 11352 involves moral turpitude]; *People v. Castro* (1985) 38 Cal.3d 301, 317 [possession of heroin for sale involves moral turpitude].) Officer Saragueta's testimony about the prior crimes was not inflammatory, and was no more damaging to the defense than the simple fact of the convictions would have been. Thus, even if the trial court had excluded Saragueta's testimony, the jury would have learned of Fletcher's prior drug sales during Fletcher's testimony.

Of course, had the prior crimes evidence been excluded from the People's case-in-chief, Fletcher might have opted not to testify. Under these circumstances the jury would not have learned of the priors. But, had Fletcher not testified, the jury would have been left with uncontradicted and overwhelming evidence, from multiple officers, that Fletcher made the cocaine sale to Officer Orellana. Against this showing, defense witness Spears's testimony was unlikely to carry the day for Fletcher. Spears testified that in 2006 Officers Gonzalez and Gasca used excessive force and made a racial slur, and Officer Saragueta planted evidence. None of these officers were involved in the 2011 undercover drug purchase from Fletcher. The only officer involved in the instant matter about whom Spears testified was Officer Calderon. But even if Spears's testimony caused the jury to infer Calderon was dishonest, we do not believe this would have been enough to undercut the People's case. Spears's testimony did not impeach the honesty of Officers Orellana, Cho, and Patterson, who made the drug transaction and recovered the buy money, respectively. To accept the defense theory, the jury would have had to conclude that these officers were also involved in falsifying evidence. The jury was

17

unlikely to make such a finding given that no evidence cast doubt on their credibility. Had Fletcher not testified, therefore, it was unlikely the jury would have rendered a more favorable result for him.

In sum, by failing to object on the grounds now advanced on appeal, Fletcher has forfeited his claim that the prior crimes evidence was improperly admitted. Such a claim would fail on the merits in any event, because Fletcher has not established prejudice.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ALDRICH, J.


We concur:


CROSKEY, Acting P. J.


KITCHING, J.


18